UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
EVAN SIEGEL,

                Plaintiff,

MEMORANDUM
AND ORDER

05CV320(SLT)(RER)

-against-

LA GUARDIA COMMUNITY
COLLEGE,

                Defendant.
----------------------------------------------------X
TOWNES, U.S.D.J.

In this action, Plaintiff has asserted claims alleging that Defendant violated his civil rights under 42 U.S.C. § 1983 ("section 1983" or "1983") by declining to reappoint him after he engaged in a protected activity, and discriminated against him in violation of New York State Human Rights Law ("NYSHRL"). Defendant moves to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the Defendant's motion is granted.

I. *Facts and Procedural History*

The following facts are drawn from the complaint filed in this action (the "Complaint") and construed in the light most favorable to the plaintiff, Evan Siegel ("Plaintiff" or "Siegel"). *CutCo Indus. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986).

From September 1997 through August 2000, Plaintiff was an employed by defendant LaGuardia Community College ("Defendant" or the "College"), a division of the City University of New York ("CUNY"), as a mathematics instructor. (Complaint ¶ 11.) On July 6, 1999, Plaintiff filed an internal complaint with Defendant alleging that he was sexually harassed by a

female employee of the College. (*Id.* at ¶ 13.) Approximately six months later, on or about January 20, 2000, he was denied reappointment as a mathematics instructor. (*Id.* at ¶ 17.)

On or about April 20, 2003, Plaintiff received, allegedly for the first time, a response to his 1999 complaint, in the form of a letter written by Defendant's Interim President Roberta S. Matthews (the "Letter"). (*Id.* at ¶¶ 14-16.) The Letter "conceded that Plaintiff's complaint was meritorious" but "went further by also faulting Plaintiff, and falsely accusing him of improper conduct." (Complaint ¶ 15.) The Court was not provided with a copy of the Letter. It is purportedly dated December 8, 1999. (*Id.* at ¶ 14.)

After receiving the Letter in 2003, Plaintiff contacted Defendant and attempted to reopen the investigation of his complaint. (Complaint ¶ 26.) On or about June 5, 2003, Gail O. Mellow ("Mellow"), President of the College, denied Plaintiff's request to reconsider the determinations made in the Letter. (*Id.* at ¶ 38.) Plaintiff argues that the foregoing actions constitute a denial of Due Process under the Fourteenth Amendment and a denial of Equal Protection under the Fifth and Fourteenth Amendments in that he "has a constitutionally-protected liberty interest in his reputation, in his status as a responsible teacher of higher education," and because he had a property interest in his position. (*Id.* at ¶¶ 28-9.) He also brings causes of action under state law for sex discrimination and retaliation. Defendant moves to dismiss on the grounds that Plaintiff's federal claims are time-barred, and, with respect the state law claims, that Plaintiff failed to properly and timely file a notice of claim as required by New York Education Law § 6224(2) and New York General Municipal Law § 50-e.

II.  *Discussion*

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint where the plaintiff has failed to state a claim upon which relief can be granted. When evaluating a Rule 12(b)(6) motion, the court must ascertain, after presuming all factual allegations in the pleading to be true and viewing them in the light most favorable to the plaintiff, whether or not the plaintiff has stated any valid ground for relief. *Ferran v. Town of Nassau*, 11 F.3d 21, 22 (2d Cir. 1993). The court may grant a Rule 12(b)(6) motion only where "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991) (*quoting Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

A.  *1983 Claims*

Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993), *cert. denied*, 512 U.S. 1240 (1994). In order to maintain a § 1983 action, a plaintiff must allege that the conduct complained of was "committed by a person acting under color of state law" and "deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994).

1.  *Due Process Claims*

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." As the Supreme Court noted in *Daniels v. Williams*, 474 U.S. 327 (1986), "this guarantee of due process has been

3

applied to *deliberate* decisions of government officials to deprive a person of life, liberty, or property." *Id.* at 331 (emphasis in original). Thus, "negligently inflicted harm is categorically beneath the threshold of constitutional due process." *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998).

"The Due Process Clause guarantees more than fair process" (*i.e*, procedural due process). *Washington v. Glucksberg*, 521 U.S. 702, 719 (1997). It also guarantees substantive due process, "barring certain government actions regardless of the fairness of the procedures used to implement them." *Lewis*, 523 U.S. at 840 (quoting *Daniels*, 474 U.S. at 331). By barring these government actions, the Due Process Clause "serves to prevent governmental power from being 'used for purposes of oppression.'" *Daniels*, 474 U.S. at 331-32 (quoting *Murray's Les v. Hoboken Land & Improvement Co.*, 59 U.S. 272, 277 (1856)).

"'[S]ubstantive due process' prevents the government from engaging in conduct that 'shocks the conscience,' *Rochin v. California*, 342 U.S. 165, 172 (1952), or interferes with rights 'implicit in the concept of ordered liberty,' *Palko v. Connecticut*, 302 U.S. 319, 325-326 (1937)." *United States v. Salerno*, 481 U.S. 739, 746 (1987). In order to establish a substantive due process violation under the first theory, a plaintiff must demonstrate that the government action was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Pena v. Deprisco*, 432 F.3d 98, 112 (2d Cir. 2005) (quoting *Lewis*, 523 U.S. at 847, n. 8.). To succeed under the second theory, a plaintiff must demonstrate a violation of an identified liberty or property interest protected by the Due Process Clause.

In this case, Plaintiff aims to succeed under the second theory, arguing that he has a "constitutionally protected liberty interest in his reputation" and a property interest in his position

as mathematics instructor. (Complaint ¶ 28.) However, neither of these claims are sufficient to withstand Defendant's motion.

   a.  *Statute of Limitations*

"In section 1983 actions, the applicable limitations period is found in the general or residual state statute of limitations for personal injury actions." *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002). It is undisputed in this case that the statute of limitations is three years. Defendant argues that, regardless of when Plaintiff received the Letter, the injury for which he seeks redress is his termination, an injury that was inflicted in January 2000, five years before Plaintiff filed the instant Complaint. Plaintiff responds that the injuries he suffers are "the false accusations and denial of his rights of equal protection, substantive and [*sic*] due process rights for engaging in a protected activity that has damaged his professional reputation." (Pl. Mem. of Law at 9.) In essence, Plaintiff claims that it is neither knowledge of the protected activity in which he engaged nor his termination that put him on notice of the alleged deprivation of his liberty or property rights in his position and reputation, but receipt of the Letter. Given the substance of the Complaint, Plaintiff's position is untenable.

   i. *Property Interest in Teaching Position*

There can be no doubt that, no later than January 20, 2000, Plaintiff was aware of any alleged injury to any property interest then held in his position as mathematics instructor at the College. As his complaint was filed five years thereafter, redress for that alleged injury is time-barred.

5

ii. *Liberty Interest in His Reputation*

Plaintiff also claims that the Letter caused injury to his reputation that was unknown to him prior to 2003, making the instant claim cognizable and timely under 1983.

In support of this argument, Plaintiff relies on the "diligence discovery rule of accrual," which tolls the applicable limitations period until "the plaintiff has, or with reasonable diligence should have discovered the critical facts of both his injury and its cause." (Pl. Mem. of L at 7.) "The diligence-discovery rule is not often applied outside of the medical malpractice area but may be appropriate in non-malpractice cases where plaintiffs face comparable problems in discerning the fact and causes of their injuries." *Barrett v. United States*, 689 F.2d 324 (2d Cir. 1982) (reversing grant of summary judgment where government's intentional concealment of chemical warfare experiment twenty-two years prior prevented plaintiff's knowledge of the cause of her father's death).

The diligence-discovery rule is often applied in cases falling under the Federal Tort Claims Act ("FTCA"), and even then, only in "exceptional" cases. *Guccione v. United States*, 670 F. Supp. 527, 536 (S.D.N.Y. 1987). What makes a case "exceptional" for the purpose of the diligence-discovery rule, is that a plaintiff's injury is "unknown," "inherently unknowable at the time it occurs," or, outside of medical malpractice, the plaintiff "was blamelessly ignorant of his claim due to the government's deliberate concealment of its facts." *Id.* In these situations, "accrual may be postponed until the plaintiff has or with reasonable diligence should have discovered the critical facts of his claim." *Id.* The rule has been applied in non-FTCA cases as well. *See, e.g., Robertson v. Seidman & Seidman*, 609 F.2d 583, 592-3 (2d Cir. 1979) (in action arising under Rule 10(b) of the Securities Exchange Act of 1934, plaintiff's exercise of due

6

diligence in discovering facts necessary to bring action could stave off summary judgment). What matters is whether "the plaintiff has or with reasonable diligence should have discovered the critical facts of both his injury and its cause." *Kronisch v. United States*, 150 F.3d 112, 121 (2d Cir. 1988).

> Discovery of the 'critical facts' of injury and causation is not an exacting requirement, but requires only knowledge of, *or knowledge that could lead to*, the basic facts of the injury, *i.e.*, knowledge of the injury's existence and knowledge of its cause or of the persons or entity that inflicted it....*[A] plaintiff need not know each and every relevant fact of his injury or even that the injury implicates a cognizable legal claim.* Rather a claim will accrue when the plaintiff knows, or should know, *enough of the critical facts of the injury and causation to protect himself by seeking legal advice.*

*Id.* (emphases added).

"If a defendant has concealed facts that are critical to a cause of action, then the statute of limitations is tolled until plaintiff discovers or with reasonable diligence should have discovered his claim. A plaintiff with knowledge of one claim but deprived of information critical to another claim may still invoke these tolls to save the claims about which he could not have known." *Yeadon v. New York City Transit Auth.*, 719 F. Supp. 204, 209 (S.D.N.Y. 1989) (question of fact remained precluding summary judgment where plaintiff alleged intentional concealment of information crucial to his claim and information undiscoverable in the exercise of reasonable diligence). Here, although Plaintiff claims that he did not know of the Letter's existence or content, he does not claim that he could not have known or that Defendant prevented him from knowing and he fails to cite any analogous case law.

In *Kronisch*, the Second Circuit held that the statute of limitations would not be tolled where, 25 years after the Central Intelligence Agency ("CIA") administered lysergic acid

7

diethylamide ("LSD") to him without his consent, causing him serious medical and psychological complications, plaintiff learned of the CIA's experiments and began writing letters to government officials, but did not file a lawsuit for an additional six years. 150 F.3d at 119-120. The court found that, notwithstanding plaintiff's allegation that the government concealed the acts giving rise to his claim and evidence that documents in connection with the experiments had already been destroyed, plaintiff "had formed a firm belief" that he was subjected to the experiment at least five years prior to his filing of the complaint. *Id.* at 122. Importantly, the court found that "even if plaintiff's awareness of his injury and its cause...could only be characterized as a mere 'hunch' or 'suspicion,' *plaintiff would have been under a duty to diligently investigate his claim.*" *Id.* (emphasis added). Finding that plaintiff failed to take further steps beyond his initial inquiries, the court found the diligence-discovery rule inapplicable and, consequently, his FTCA claim was time-barred. *Id.* at 123.

In *Guccione*, the court granted defendant's motion for judgment on the pleadings, finding that, notwithstanding government concealment of evidence, plaintiff knew or should have known the critical facts in support of his claim: "The diligence discovery rule does not preclude a claim from accruing until a plaintiff has actual access to every detail of his alleged injury and to information alerting him to every possible legal theory of recovery to which his injury might give rise." 670 F. Supp. at 537; *see also Barrett*, 689 F.2d at 327 (defining diligence-discovery rule as appropriate where a plaintiff experiences problems "discerning the fact and cause of their injuries...and are "blamelessly ignorant of the existence or cause of the injury").

With neither an allegation of concealment on the part of the defendant nor one of diligence on the part of Plaintiff, Siegel was not "blamelessly ignorant" of the Letter's alleged

8

injury to his reputation. *See Kubrick v. United States*, 444 U.S. 111, 122 (1979) (declining to toll statute where plaintiff injured in VA hospital but unaware that injury may have been caused by defendant's malpractice because, *inter alia*, "[t]he prospect [of recovery for injuries] is not so bleak for a plaintiff in possession of the critical facts that he has been hurt and who has inflicted the injury. He is no longer at the mercy of the [defendant]. There are others who can tell him if he has been wronged, and he need only ask."); *Barrett*, 689 F.2d at 330 (questions of fact precluding summary judgment where plaintiff alleged government concealment and diligence of decedent's estate); *Yeadon*, 719 F. Supp. at 209 (denying summary judgment based on allegations of fraudulent concealment preventing plaintiff's discovery of claim); *cf. Jones v. Long Island R.R.*, 1998 WL 221365, *3-4 (E.D.N.Y. 1998) (Block, J.) (finding ADA claim time-barred because "[t]here is absolutely no basis in the record...for a finding that [defendant] actively misled [plaintiff] or that [plaintiff] looked into the circumstances underlying [defendant's] decision" for the adverse employment action and because "once an adverse employment action is taken....a plaintiff is on notice and has an obligation to safeguard his rights."). Plaintiff possessed knowledge, that, with due diligence, would have led to a discovery of the critical facts necessary to sustain a claim that he suffered an injury to his reputation in the course of his termination and, without an allegation that Defendant obstructed his attempts to investigate the cause or nature of his injury or an allegation that Plaintiff actively pursued his potential claim during the period he seeks to have tolled, his claim remains time-barred.

2. *Equal Protection*

"To state a claim for an equal protection violation, [plaintiff] must allege that a government actor intentionally discriminated against [him] on the basis of race, national origin, or gender. " *Hayden v. County of Nassau*, 180 F.3d 42, 48 (2d Cir. 1999). This can be done one of three ways: "a law or policy is discriminatory on its face if it expressly classifies persons on the basis of race or gender. In addition, a law which is facially neutral violates equal protection if it is applied in a discriminatory fashion. Lastly, a facially neutral statute violates equal protection if it was motivated by discriminatory animus and its application results in a discriminatory effect." *Id.*

Plaintiff argues that "Defendant's action causing Plaintiff's denial of reappointment are violative of [his] Equal Protection Rights" but Plaintiff fails to detail any discriminatory policy or law that is responsible for the vaguely-described "action" resulting in Defendant's denial of his reappointment. For that reason, this claim must also be dismissed.

B. *State Law Claims*

Section 6224(2) of New York Education Law provides:

> No action or proceeding based on a cause of action involving a community college of the city university fo New York...may be prosecuted or maintained unless it shall appear by and as an allegation in the complaint...that at least thirty days have elapsed since a demand setting forth the underlying basis for such matter was presented to the city university for adjustment, and that the officers or bodies having the power to adjust or pay such demand have neglected or refused to make an adjustment or payment thereof for thirty days, after such presentment.

N.Y. Educ. L. § 6224(2). It is undisputed that Plaintiff failed to file such notice and, as such, his state law claims are also dismissed.

10

III. *Conclusion*

Defendant's motion to dismiss is hereby granted. Any damage to Plaintiff's property interests in his position was known to him five years prior to his filing of the Complaint. Though Plaintiff also alleges that he was unaware of the injury to his reputation until 2003, his argument that Plaintiff had no reason to suspect discrimination and retaliation is unavailing. Finally, Plaintiff's failure to file a timely notice of claim requires dismissal of his NYSHRL claim.

**SO ORDERED.**

SANDRA L. TOWNES
UNITED STATES DISTRICT JUDGE

Dated: April 21, 2006
Brooklyn, NY